UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ESTATE OF KEVIN MARCUS JOSEPH, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SUB SEA SYSTEMS, INC., et al., <br><br> Defendants. | No. 2:25-cv-00496-DAD-AC <br><br> ORDER GRANTING PLAINTIFFS' MOTION TO REMAND, REMANDING THIS ACTION TO THE SACRAMENTO COUNTY SUPERIOR COURT, AND DENYING DEFENDANT'S MOTION TO DISMISS AS MOOT <br><br> (Doc. Nos. 3, 17, 22) |

This matter is before the court on plaintiffs' motion to remand this action to the Sacramento County Superior Court (Doc. No. 17) and the motion to dismiss plaintiffs' complaint filed on behalf of defendant Sub Sea Systems, Inc. ("defendant Sub Sea") (Doc. No. 22). The motion to remand and motion to dismiss were taken under submission on the papers on March 24, 2025 and May 13, 2025, respectively. (Doc. Nos. 18, 23.) For the reasons explained below, plaintiffs' pending motion to remand will be granted. Defendant's pending motion to dismiss will therefore be denied as moot in light of this order.

**BACKGROUND**

On October 16, 2024, plaintiffs filed a complaint in Sacramento County Superior Court initiating this suit, alleging that decedent Kevin Marcus Joseph died as a result of a defective

1

diving helmet manufactured by defendants. (Doc. No. 1 at 9–18.) Based upon that allegation, plaintiffs assert 16 claims under California state law against defendants. (*Id.* at 9–10.)

On February 11, 2025, defendant Sub Sea removed the action to this federal court on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1332(a) and 1441(b). (Doc. No. 1 at 1–2.) Plaintiffs are citizens of North Carolina. (*Id.* at ¶¶ 4, 5.) Defendant Sub Sea is a citizen of Wyoming and California. (*Id.* at ¶ 6.) Defendant Aquanautas Curacao B.V. is a citizen of Curacao.[1] (*Id.* at ¶ 7.) At the time of removal, plaintiffs had not yet served either defendant. (*Id.* at ¶ 2.) Rather, on January 17, 2025, plaintiffs had emailed a copy of their complaint to defendant Sub Sea's counsel. (*Id.*)

On February 18, 2025, defendant Sub Sea filed its motion to dismiss.[2] (Doc. No. 3.) On March 11, 2025, plaintiffs their motion to remand. (Doc. No. 17.) Defendant Sub Sea filed its opposition on March 25, 2025. (Doc. No. 19.) On April 6, 2025, plaintiffs filed their reply thereto. (Doc. No. 21.) On May 14, 2025, plaintiffs filed their opposition to the motion to dismiss. (Doc. No. 24.) On May 27, 2025, defendant Sub Sea filed its reply thereto. (Doc. No. 25.)

## LEGAL STANDARD

A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. 28 U.S.C. § 1441(a). Removal is proper when a case originally filed in state court presents a federal question or where there is diversity of citizenship

/////

---

[1] Defendant Sub Sea contends that this court has diversity jurisdiction over this action pursuant to § 1332(a)(1) because the parties "are citizens of different states." (Doc. Nos. 1 at ¶ 3; 19 at 10); *see* 28 U.S.C. § 1332(a)(1) (providing diversity jurisdiction where the parties are "citizens of different States"). However, as noted, defendant Aquanautas Curacao B.V. is "a foreign corporation organized and existing under the laws of Curaçao." (*Id.* at ¶ 7.) The court may nevertheless exercise diversity jurisdiction over this action. *See* 28 U.S.C. § 1332(a)(3) (providing diversity jurisdiction where the parties are "citizens of different States and in which citizens or subjects of a foreign state are additional parties").

[2] That motion was improperly noticed before the assigned magistrate judge, who issued a minute order on March 26, 2025 directing defendant Sub Sea to refile the motion before the undersigned. (Doc. No. 20.) Defendant Sub Sea did so on April 30, 2025. (Doc. No. 22.)

among the parties and the amount in controversy exceeds $75,000.  *See* 28 U.S.C. §§ 1331, 1332(a).

"If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded."  28 U.S.C. § 1447(c).  "The removal statute is strictly construed against removal jurisdiction, and the burden of establishing federal jurisdiction falls to the party invoking the statute."  *Cal. ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 838 (9th Cir. 2004) (citation omitted); *see also Provincial Gov't of Marinduque v. Placer Dome, Inc.*, 582 F.3d 1083, 1087 (9th Cir. 2009) ("The defendant bears the burden of establishing that removal is proper.").  If there is any doubt as to the right of removal, a federal court must reject jurisdiction and remand the case to state court.  *Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *see also Valdez v. Allstate Ins. Co.*, 372 F.3d 1115, 1118 (9th Cir. 2004).

"A civil action otherwise removable solely on the basis of [diversity jurisdiction] may not be removed if any of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought."  28 U.S.C. § 1441(b)(2).  This provision is commonly known as the "forum defendant rule."  *Casola v. Dexcom, Inc.*, 98 F.4th 947, 950 (9th Cir. 2024).

## ANALYSIS

**A.     Plaintiffs' Motion to Remand**

Plaintiffs move to remand this action to the Sacramento County Superior Court on the grounds that defendant Sub Sea engaged in a so-called "snap removal," i.e., that defendant Sub Sea removed this action prior to being served and despite being a citizen of the state in which the action was brought.  (Doc. No. 17.)  Defendant Sub Sea does not dispute that it is a citizen of California.  (*See* Doc. No. 19 at 8.)  Resolution of the pending motion therefore turns on whether § 1441(b)(2) permits snap removal, at least in the circumstances present here, where an unserved forum defendant—rather than a served or unserved out-of-state defendant—is the party removing the action.

   1.     <u>The Split Among Federal Courts on Snap Removal</u>

As the Ninth Circuit recently noted, the permissibility of snap removal is an open question in this circuit:

3

> We do not today decide the final issue imbedded in the remand orders: whether Dexcom in fact violated the forum defendant rule in these cases. . . . [Section] 1447(d) bars us from addressing the correctness of the district court's implied finding that snap removals are not allowed. . . .
>
> It is now common practice for in-forum defendants in potential diversity actions to race to file a notice of removal before being served with process and then claim shelter under the "properly joined and served" language in § 1441(b)(2). Three sister circuits have held that § 1441(b)(2), by its plain text, permits snap removals—notwithstanding counterarguments that the basic premise of diversity jurisdiction is to protect non-forum litigants from potential state court bias toward in-forum litigants.

*Casola*, 98 F.4th at 964 & n.17.

District courts across the country are divided as to the propriety of snap removal in various circumstances. As one district court noted:

> In considering whether § 1441(b)(2) permits snap removal, federal courts have split in their reasoning on almost every question of statutory interpretation. First, courts disagree about whether the plain language is ambiguous. Moreover, courts who have found the plain language unambiguous disagree about whether it permits or prohibits snap removal. Those courts who have found the plain language unambiguously permits snap removal then disagree about whether that produces an absurd result.

*Deutsche Bank Nat'l Tr. Co. v. Old Republic Title Ins. Grp.*, 532 F. Supp. 3d 1004, 1011 (D. Nev. 2021).

"Speaking generally, district courts [in the Ninth Circuit] have coalesced within judicial districts to, among other things, not 'disrupt the settled expectations of litigants' within the relevant judicial district." *Villasenor v. Quadient, Inc.*, No. 25-cv-00300-FWS-JDE, 2025 WL 958379, at *4 (C.D. Cal. Mar. 28, 2025). For instance, courts in the Central District of California and the District of Nevada generally prohibit snap removal, while courts in the Northern District of California generally permit the practice. *See id.* ("Because this district favors remand in cases like this, the court finds that rejecting snap removal is appropriate here."); *Warm Springs Road CVS, LLC v. SS Mgmt., LLC*, No. 24-cv-00467-MMD-CLB, 2024 WL 4589893, at *3 (D. Nev. Oct. 28, 2024) ("[S]nap removals most often arise in diversity actions involving multiple defendants, one or more of whom is not a forum resident. Courts in this district have largely

agreed that snap removals under those circumstances are impermissible."); *Adelaja v. Guillen*, No. 24-cv-08159-SI, 2025 WL 502050, at *2 (N.D. Cal. Feb. 14, 2025) ("These circumstances suggest an element of gamesmanship in defendants' removal action. Nonetheless, the Court recognizes the importance of consistent holdings within the Northern District to provide clarity and predictability for litigants and holds that a fair reading of the plain language of § 1441(b)(2) allows snap removals. Accordingly, the Court will deny plaintiff's motion to remand."). No such consensus among district judges exists in the Eastern District of California.[3]

    2.     Whether Snap Removal is Permissible in These Circumstances

As noted above, no defendant had been served at the time of the removal challenged here, and this action was removed by the forum defendant. In these circumstances, for the reasons explained below, the court finds that the plain language of § 1441(b)(2) is susceptible to two reasonable interpretations and is therefore ambiguous. The court therefore considers the statute's history and purpose and concludes that those factors do not support snap removal. In light of the presumption against removal, the court resolves all doubts in favor of remand and concludes that snap removal is not permissible in the circumstances before the court in this case.

        *a.*     *Whether the Plain Language of § 1441(b)(2) is Ambiguous*

Statutory interpretation "begin[s] with the plain language of the statute." *Moran v. Screening Pros, LLC*, 943 F.3d 1175, 1183 (9th Cir. 2019). "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." *Id.* "A statute must be

---

[3] It appears that only one judge in this district has addressed the issue of snap removal directly. *See May v. Haas*, No. 2:12-cv-01791-MCE-DAD, 2012 WL 4961235 (E.D. Cal. Oct. 16, 2012). That judge found "no reasons to depart from the plain language of § 1441(b)" because "the concern of procedural gamesmanship by defendants [was] not present" in that case, where the removing defendant had already been served and was not the forum defendant. *Id.* at *1, *3. Another judge of this court recently issued a decision suggesting skepticism of snap removal but granting the motion to remand in that case for a simpler reason, namely that "diversity of citizenship [was] lacking." *Edwards v. UPS*, No. 2:24-cv-01283-KJM-DMC, 2024 WL 4132664, at *3–*4 (E.D. Cal. Sept. 10, 2024). Similarly, another judge in this district recently issued a decision acknowledging the issue of the propriety of snap removal but, in denying a motion to remand, finding that the defendant in that case was "not a California citizen such that the forum-defendant rule would be applicable" in the first place. *Roe v. Doe*, No. 2:24-cv-03488-DJC-CSK, 2025 WL 1065102, at *5 (E.D. Cal. Apr. 9, 2025).

1  'susceptible to more than one reasonable interpretation' to be ambiguous." *Guido v. Mount Lemmon Fire Dist.*, 859 F.3d 1168, 1173 (9th Cir. 2017). "If the language is ambiguous, [the court] look[s] to 'canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent.'" *Moran*, 943 F.3d at 1183.

District courts have divided over whether the plain language of § 1441(b)(2) permits snap removal in circumstances where no defendant has been served. Many courts have concluded "that 'properly joined and served' operates as a condition precedent to the forum defendant rule," that is, that § 1441(b)(2) does not apply to bar removal until a forum defendant has actually been served. *Deutsche Bank*, 532 F. Supp. 3d at 1012; *see also id.* at 1012 n.4 (collecting cases). This interpretation, endorsed by multiple federal courts of appeal, is clearly reasonable. *See, e.g.*, *Gibbons v. Bristol-Myers Squibb Co.*, 919 F.3d 699, 705 (2d Cir. 2019); *Texas Brine Co., LLC v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 486 (5th Cir. 2020). Other courts, however, have followed the district court's decision in *Gentile v. Biogen Idec, Inc.*, 934 F. Supp. 2d 313 (D. Mass. 2013) and "have found that the plain meaning of the statute requires at least one defendant to have been properly served" before removal is permissible. *Id.* at 1012; *see id.* at 1012 n.5 (collecting cases); *Gentile*, 934 F. Supp. 2d at 318–19 (D. Mass. 2013) (considering the dictionary definition of "any," the statute's use of the definite article "the," and the presumption against "render[ing] statutory words or phrases meaningless, redundant or superfluous" to find that the plain language of § 1441(b)(2) "assumes that there is one or more party in interest that has been properly joined and served already at the time of removal").

As acknowledged above, the first question before the court is whether the plain language of § 1441(b)(2) is susceptible to two reasonable interpretations and is therefore ambiguous. The undersigned finds the district court's interpretation of § 1441(b)(2)'s language and reasoning expressed in *Gentile* to be reasonable.[4] Numerous district courts across the country have found the reasoning of that decision to be persuasive, including, as noted, nearly all of the judges in at least two districts of the Ninth Circuit. *See, e.g.*, *Allied Prop. & Cas. Ins. Co. v. Hyundai Motor*

---

[4] Having found its analysis to be reasonable, this court need not consider whether the district court's decision in *Gentile* is ultimately persuasive in this regard.

6

1  *Am.*, No. 24-cv-01135-DOC-BFM, 2024 WL 3495340, at *3–*4 (C.D. Cal. July 22, 2024); *Iraci*
2  *v. Bradford*, No. 23-cv-00315-JAD-NJK, 2023 WL 3947564, at *2 (D. Nev. June 7, 2023) ("But
3  after carefully considering the parties' authorities, I agree with the vast majority of the judges in
4  this district that Judge Woodlock's interpretation in *Gentile* 'is the most cogent.'").  Similarly, in
5  a decision addressing removal before service under § 1446(b)(1), the First Circuit declined to
6  address the issue of removal prior to service under § 1441(b)(2) but suggested that the
7  interpretation advanced by the district court in *Gentile* might well be persuasive.  *See Novak v.*
8  *Bank of N.Y. Mellon Tr. Co., NA.*, 783 F.3d 910, 911 & n.1 (1st Cir. 2015) ("*See generally*,
9  *Gentile* . . . ; *Lothrop v. N. Am. Air Charter, Inc.*, No. 13-10235-DPW, 2013 WL 3863917, at *2
10 (D.[ ]Mass. July 11, 2013) (concluding that § 1441(b)(2) 'create[s] only a narrow exception, in
11 cases involving forum defendants, to the generally-accepted rule that "formal service is not
12 required before a defendant can remove" ' (citation omitted))").  Certainly the undersigned cannot
13 find that the interpretation advanced by the district court in *Gentile*, arrived at after thorough and
14 thoughtful analysis of the statutory text and adopted by district courts across the country, is
15 unreasonable.  *See Bank of Am., N.A. v. Fidelity Nat'l Title Grp.*, 594 F. Supp. 3d 1234, 1241 (D.
16 Nev. 2022) ("The fact that reasonable jurists differ on [§ 1441(b)(2)'s] language evidences its
17 ambiguity.").
18 /////
19 /////
20 /////
21 /////
22 /////
23 /////
24 /////
25 /////
26 /////
27 /////
28 /////

Because § 1441(b)(2) is "susceptible to more than one reasonable interpretation," at least in regard to whether removal is permissible where no defendant has yet been served, the statute is ambiguous. *Guido*, 859 F.3d at 1173.[5]

### b.  Whether the Purpose of the Statute Supports Snap Removal

Above, the court has determined that the language of § 1441(b)(2) is susceptible to more than one reasonable interpretation and is therefore ambiguous. "If the language is ambiguous, [the court] look[s] to 'canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent.'" *Moran*, 943 F.3d at 1183. In *Gentile*, the district court aptly summarized the history and purpose of § 1441 as follows:

> The removal doctrine has been incorporated in federal court jurisprudence since the Judiciary Act of 1789. The removal power, and by extension the forum defendant rule, is founded on the basic premise behind diversity jurisdiction itself, the roots of which were described in the Federalist Papers. Diversity jurisdiction was designed to protect non-forum litigants from possible state court bias in favor of forum-state litigants.
>
> The removal power serves this purpose by giving a non-forum defendant the ability to seek the protection of the federal court against any perceived local bias in the state court chosen by the plaintiff. But the protection-from-bias rationale behind the removal power evaporates when the defendant seeking removal is a citizen of

---

[5] While it did not directly advance the following argument, the court notes that one of the district court decisions cited by defendant Sub Sea contends that the Ninth Circuit's recent decision in *Mayes v. American Hallmark Insurance Co. of Texas*, 114 F.4th 1077 (9th Cir. 2024) "undermines a key premise relied upon by many courts" that have found ambiguity in the plain language of § 1441(b)(2). *Country Cas. Ins. Co. v. Hyundai Motor Am.*, No. 24-cv-02428-SB-JDE, 2025 WL 242194, at *1 (C.D. Cal. Jan. 16, 2025) (citing *Gentile*, 934 F. Supp. 2d at 316–18). As is the norm in cases addressing snap removal, at least one other district court disagrees. *See Adirondack Ins. Exchange v. Kia Corp.*, No. 24-cv-01134-JWH-MRW, 2024 WL 4213586, at *3 (C.D. Cal. Sept. 16, 2024) ("*Mayes* does not alter the Court's conclusion with respect to the impropriety of snap removal."). In its decision in *Mayes*, the Ninth Circuit held that "§ 1446(b)(1) does not require service before removal." 114 F.4th at 1079. The Ninth Circuit "note[d] that all other circuit courts that have considered this issue have reached the same conclusion. *See Novak*[, 783 F.3d at 914.]" *Id.* As discussed above, the First Circuit in its decision in *Novak* expressly declined to consider whether "§ 1441(b)(2) create[s] only a narrow exception, in cases involving forum defendants, to the generally-accepted rule that formal service is not required before a defendant can remove[.]" *Novak*, 783 F.3d at 911 n.1 (internal quotation marks omitted) (citing *Gentile*, 934 F. Supp. 2d 313). The court finds that the Ninth Circuit's decision in *Mayes*, addressing different language appearing in a separate statute, does not undermine the reasoning of the district court in *Gentile* and similar decisions—regardless of whether the court ultimately finds that reasoning to be persuasive.

> the forum state. Thus, the forum defendant rule provides some measure of protection for a plaintiff's choice of forum, when the overarching concerns about local bias against the defendant underlying the removal power are not present, by allowing a plaintiff to move for a remand of the case to the state court if he chooses.
> The "properly joined and served" limitation in § 1441(b) is a more recent development, added to the removal statute by Congress in 1948. Courts have generally recognized that the legislative history of the 1948 revision provides no explanation for the inclusion of the "properly joined and served" language. A review of the Supreme Court jurisprudence at the time of the 1948 revision, however, suggests the purpose of the "properly joined and served" language was to prevent plaintiffs from defeating removal through improper joinder of a forum defendant; incomplete service appears to have been included as a means of identifying and policing such abuse by proxy.

*Gentile*, 934 F. Supp. 2d at 319–20 (internal citations omitted). Or as another district court succinctly put it, "[a]n interpretation of the forum defendant rule that would allow a forum defendant to remove an action to federal court would clash with the policy behind the statute." *Am. Fam. Connect Prop. & Cas. Ins. Co. v. Hyundai Motor Am.*, No. 24-cv-01141-DOC-DFM, 2024 WL 4454097, at *4 (C.D. Cal. Oct. 8, 2024).

There is no indication that Congress intended to eviscerate the forum defendant rule by way of its 1948 amendment of § 1441. *Cf. Rogers v. Gosney*, No. 16-cv-08154-PCT-GMS, 2016 WL 4771376, at *3 (D. Ariz. Sept. 14, 2016) ("[I]t is inconceivable that Congress, in adding the 'properly joined and served' language, intended to create an arbitrary means for a forum defendant to avoid the forum defendant rule simply by filing a notice of removal before the Plaintiff is able to effect process.").[6] Perhaps notably, nearly half a century passed after the 1948 amendment of § 1441 before the first report of a party even attempting snap removal. *See* Valerie M. Nannery, *Closing the Snap Removal Loophole*, 86 U. Cin. L. Rev. 541, 550 (2018) (stating

---

[6] Nor is there any indication that the 2011 amendment to § 1441(b)(2)—which changed the statutory text from "shall be removable only if *none* of the parties in interest properly joined and served" to "may not be removed if *any* of the parties in interest properly joined and served"— reflected an intent by Congress to permit snap removal. *Gentile*, 934 F. Supp. 2d at 316 n.2 (emphasis added); *id.* at 321 ("Congress' further silence when amending the statute in 2011, despite its presumed knowledge of the disparate interpretations of the district courts, also indicates that it intended no substantive change. Even courts reading section 1441(b) differently than I have agree on this point.").

that the first documented instance of snap removal occurred in 1997); *Recognition Commc'ns, Inc. v. Am. Auto. Ass'n, Inc.*, No. 97-cv-00945-JAS, 1998 WL 119528, at *1 (N.D. Tex. Mar. 5, 1998) ("On April 24, 1997, before RCI had formally served any of the Defendants, AAA, ACSC, and Club Services filed a Notice of Removal in this Court.").

Accordingly, the court concludes that the "legislative history, and the statute's overall purpose" weigh against a finding that Congress intended to permit snap removal. *Moran*, 943 F.3d at 1183.

### c. The Presumption Against Removal

Of course, "[r]emoval statutes are 'strictly construed, and any doubt about the right of removal requires resolution in favor of remand.'" *Casola*, 98 F.4th at 954. The presumption against removal is applicable here in light of the ambiguity found by this court in the statutory text. *Cf. Texas Brine Co., LLC v. Am. Arb. Ass'n, Inc.*, 955 F.3d 482, 487 (5th Cir. 2020) ("It is true, as Texas Brine points out, that we strictly construe the removal statute and favor remand. Here, though, we do not have 'any doubt about the propriety of removal' because, as discussed, the text is unambiguous."); *Corber v. Xanodyne Pharms., Inc.*, 771 F.3d 1218, 1226 n.8 (9th Cir. 2014) (finding that "the principles of ambiguity not favoring federal jurisdiction and of strict construction of jurisdictional statutes are not offended here because there is nothing ambiguous about" the statutory text).[7]

Here, the court has concluded that the plain language of § 1441(b)(2) is susceptible to multiple reasonable interpretations and is therefore ambiguous, and that the history and purpose of the statute weigh against a finding that Congress intended to authorize snap removal. There is certainly "doubt about the right of removal," *Casola*, 98 F.4th at 954, at least in the circumstances applicable here where a forum defendant removed the action to federal court at a time when no defendant had yet been served.

---

[7] The Ninth Circuit's decision in *Corber* considered the Class Action Fairness Act ("CAFA") prior to the Supreme Court's decision in *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81 (2014), in which the Supreme Court concluded that "no antiremoval presumption attends cases invoking CAFA," 574 U.S. at 89. The Ninth Circuit's analysis in *Corber* was applying the presumption that is applicable to this action.

10

Accordingly, plaintiffs' motion to remand will be granted. *See Crawford v. Top Rank, Inc.*, No. 22-cv-00081-APG-EJY, 2022 WL 2315591, at *2–*3 (D. Nev. June 28, 2022) ("While this interpretation [advanced by the district court's decision in *Gentile*] is not the only one possible, it is the most cogent. Reasonable jurists have interpreted this statute differently, and the fact that '[d]istrict courts are in disarray on the question' confirms that the statute's language is ambiguous. I thus 'look to canons of construction, legislative history, and the statute's overall purpose to illuminate Congress's intent.' . . . The purposes underlying § 1441(b)(2) are better served by disallowing removal before any defendant is served. . . . Here, there is more than considerable doubt as to Top Rank's right to remove, so federal jurisdiction must be rejected. Top Rank is a forum defendant, and its removal was premature because it had not yet been served and only three days elapsed between filing the complaint and removal.") (second alteration in original) (internal citations omitted).

**B.      Defendant Sub Sea's Motion to Dismiss**

This action will be remanded to the Sacramento County Superior Court. Accordingly, defendant Sub Sea's motion to dismiss will be denied as moot in light of this order.

**CONCLUSION**

For the reasons discussed above:

1. Plaintiffs' motion to remand (Doc. No. 17) is GRANTED;
2. Defendant's motion to dismiss plaintiffs' complaint (Doc. Nos. 3, 22) is DENIED as moot in light of this order;
3. This action is REMANDED to the Sacramento County Superior Court; and
4. The Clerk of the Court is directed to CLOSE this case.

IT IS SO ORDERED.

Dated:   **August 8, 2025**

_____
DALE A. DROZD
UNITED STATES DISTRICT JUDGE

12